IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| DR. JOESPH S. MOSES, JR., | |
| Plaintiff, | Civil Action File No.: 2:10-CV-258-WCO |
| vs. | Jury Trial Demanded |
| CITY OF ARCADE, GEORGIA, OFFICER BLAKE YEARGIN, Individually, POLICE CHIEF RANDY WILLIAMS Individually and in his official Capacity as the Police Chief of the City of Arcade Police Department, | |
| Defendants. | |

## COMPLAINT

COMES NOW Dr. Joseph S. Moses, Jr. (Dr. Moses), the Plaintiff, and brings this Complaint seeking damages for the violations of his First and Fourth Amendment rights under the United States Constitution and corollary rights under the Georgia Constitution, and for false imprisonment and harassment by the City of Arcade police during an illegal and unwarranted traffic stop.  As shown more fully below, Plaintiff was stopped without any arguable probable cause and on proved false charges, detained by the City of Arcade police officer because he protested

the stop, and finally wrongfully cited for violations of traffic laws that were without any basis in fact.

## JURISDICTION AND VENUE

1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a)(3), the First, Fourth and Fourteenth Amendments of the United States Constitution, and pendent jurisdiction pursuant to 28 U.S.C. § 1367 under Article I, § 1, ¶¶ V, VIII of the Georgia Constitution. The actions of defendants were under color of law. Venue is proper in this Court.

## PARTIES

2.

Plaintiff Dr. Joseph S. Moses, Jr. ("Dr. Moses") resides in and is a citizen of Forsyth County.

3.

Defendant City of Arcade is a municipality established under the laws Georgia and a local charter. The City of Arcade Police Department is a municipal service provided by the City of Arcade.

4.

Defendant Officer William Blake Yeargin ("Officer Yeargin") was, at the time of this incident, a law enforcement officer with the City of Arcade Police Department. He is sued in his individual capacity as a former Arcade law enforcement officer. Defendant was at all times pertinent hereto an officer acting under color of state law.

5.

Defendant Police Chief Randy Williams is the head of the City of Arcade Police Department. He is sued in his individual capacity for deliberate indifference on monitoring, training and policies developed (or not developed) and in his official capacity as the head of all law enforcement for the City of Arcade. Defendant was at all times pertinent hereto an officer acting under color of state law.

## FACTUAL ALLEGATIONS

### THE ILLEGAL STOP OF DR. MOSES

6.

On December 10, 2008, Dr. J. Moses was lawfully operating his vehicle on Highway 129 heading south to return home after visiting his daughter in Athens.

7.

Dr. Moses was obeying all rules of the road and in compliance with all Georgia laws at all times relevant to this incident. Dr. Moses was driving at a reasonable and legal rate of speed and his vehicle was fully operational.

8.

Dr. Moses' wife was traveling with him in the car.

9.

On or about 9:53 p.m. that evening, with heavy fog in the area, Dr. Moses saw the reflection of the lights on a marked police cruiser parked in the road gore (area where two roads merge clearly marked as prohibited for vehicles). The police car had no lights on. After Dr. Moses passed the unlit squad car, the officer, Officer William Blake Yeargin, pulled out and began to closely follow Dr. Moses.

10.

Officer Yeargin's vehicle followed dangerously close, less than ten feet behind Dr. Moses' car, for several hundred yards down Highway 129.

11.

Dr. Moses slowed his vehicle because the officer had been following too closely. Dr. Moses was concerned about safety and attempted to avoid any further danger by allowing the officer to drive past. Because the officer continued to

follow dangerously close, Dr. Moses decided to pull off the road to allow Officer Yeargin to pass.

12.

When he pulled to the right, Officer Yeargin turned on his blue lights and approached Dr. Moses and his vehicle. Officer Yeargin exited his vehicle, approached the Dr. Moses' vehicle and asked for identification. Officer Yeargin explained to Dr. Moses that the reason for the "stop" was Dr. Moses' alleged slow rate of speed and his movement out of the traffic lane. However, Dr. Moses was driving in full compliance with all Georgia laws.

13.

Dr. Moses immediately questioned the legitimacy of the traffic stop. Dr. Moses questioned the methods used by Officer Yeargin, the procedures which Officer Yeargin employed prior to stopping Dr. Moses and finally, Dr. Moses claimed that Officer Yeargin was improperly harassing him.

14.

Officer Yeargin became agitated. Officer Yeargin then identified another reason for the traffic stop not stated to Dr. Moses at the initiation of the traffic stop: a false claim of failure to have working tag lights. Again, Dr. Moses protested the legitimacy of the stop and detention and stated to Officer Yeargin that he had done nothing wrong.

15.

Officer Yeargin became increasingly agitated at Dr. Moses' unwillingness to agree with the reasons for the stop. He stated to Dr. Moses that because Dr. Moses had questioned the legitimacy of the traffic stop, that Officer Yeargin would issue Dr. Moses a traffic citation, when he had indicated earlier that he would issue only a warning.

16.

Because of Dr Moses' criticisms of the stop, Officer Yeargin issued two traffic citations to Dr. Moses one for "Failure to Maintain Lane" and the other for "Tag Light Requirements."

17.

On the citation, Officer Yeargin noted, "Followed vehicle at 32 mph in a 55 zone."

18.

Officer Yeargin insisted that Dr. Moses was traveling too slow for that particular road and noted that it was a "55 mph zone."

19.

Officer Yeargin's position on Highway 129 was actually a 45 mph zone.

20.

Less than 30 minutes after the traffic stop was completed, Dr. Moses sought the opinion of two Jefferson City Police Officers. Both police officers inspected Dr. Moses' tag lights and confirmed in writing that the tag lights were fully compliant with Georgia's tag light requirements.

**OFFICER YEARGIN'S HISTORY OF ILLEGAL STOPS**

21.

Officer Yeargin earned a reputation for overly aggressive tactics and a propensity to make "illegal stops".

22.

Officer Yeargin has been involved in several separate incidents involving his overzealous pursuit of citizens in motor vehicles on traffic stops.

23.

In November 2008, a citizen filed a formal complaint against Officer Yeargin for being overly aggressive and verbally abusive during an October 2008 traffic stop.   Officer Yeargin pulled over a young male driver for no apparent reason.  The driver inquired into the reason for the traffic stop and Officer Yeargin verbally abused the driver saying, "Shut up before I arrest you."

24.

The driver's father heard the officer on the driver's cellular phone and immediately drove to the site of the traffic stop. When the driver's father arrived at the scene and pulled over to lawfully observe the traffic stop from a distance of greater than 100 feet, Officer Yeargin threatened him with arrest and then issued the driver's father two traffic citations for conditions that Officer Yeargin himself had caused.

25.

Officer Yeargin's supervisor, Sergeant Michael Adams, reported concerns over Officer Yeargin's procedures during traffic stops and his unprofessional and threatening demeanor. Offier Yeargin was issued a record of verbal counseling for his behavior during this traffic stop.

26.

In early 2009, a local female driver accused Officer Yeargin of harassment and unprofessionalism during a traffic stop.

27.

Officer Yeargin had stopped the same vehicle several times for reasons the driver did not believe existed.

28.

The investigator reviewing the videotape of the stop specifically noted Officer Yeargin's sarcastic demeanor and unprofessionalism during this traffic stop.

29.

The charges of harassment against Officer Yeargin were substantiated and Officer Yeargin was issued a second record of verbal counseling regarding his unprofessional and discourteous behavior while on duty.

**CITY OF ARCADE'S SPEED TRAP POLICY**

30.

The stop, seizure and arrest of Dr. Moses were without probable cause or arguable reasonable suspicion of any criminal activity.   The stop was premised on proved and intentionally false charges as the result of Defendants overzealous and improper tactics in creating a "speed trap" on Highway 129.

31.

In December 2008 alone, the City of Arcade Police Department issued numerous citations at or near the location where Dr. Moses was stopped.   Upon information and belief, significantly more citations were issued at or near this location than any other place in the entire City of Arcade.

32.

An investigation into the City of Arcade Police Department's improper use of speed detection equipment was requested after another citizen complained of the City of Arcade Police Department's improper use of speed detection equipment to generate funds for the city budget.

33.

The actions of defendants during the stop, seizure and arrest were pursuant to a policy, custom and practice of the City of Arcade and/or with the final approval or ratification of the final decision-maker for such issues. All actions were done under color of law, and with deliberate indifference to clearly established rights of the plaintiffs.

## **CLAIMS FOR RELIEF**

34.

The allegations set forth in Paragraphs one through thirty-three are incorporated by reference herein.

35.

The First Amendment protects a citizen's freedom of speech.  By issuing Dr. Moses two traffic citations in retaliation for Dr. Moses expressing his views, Defendants deprived Dr. Moses of his right to freedom of speech as protected by

the First and Fourteenth Amendments, as well as the Georgia Constitution Article I, Section I, Paragraphs V and IX.

36.

The Fourth Amendment prohibits the police from stopping an automobile and detaining the driver unless they have a reasonable, articulable suspicion that the driver is violating the law. By stopping and detaining Dr. Moses for no legal reason without even arguable probable cause and on proved false charges and then harassing and ultimately improperly fabricating a basis for a traffic citation, Officer William Blake Yeargin and the City of Arcade Police Department deprived Dr. Moses of his right to be secure in his person and to be free from unreasonable searches and seizures as protected by the Fourth and Fourteenth Amendments of the United States Constitution, as well as the Georgia Constitution Article I, Section 1, Paragraph I, VII, and XIII.

37.

By issuing Dr. Moses an additional traffic citation after Dr. Moses asserted his right to be free from unreasonable seizure Officer William Blake Yeargin and the City of Arcade Police Department deprived Dr. Moses of his right to be secure in his person and to be free from unreasonable searches and seizures as protected by the Fourth and Fourteenth Amendments of the United States Constitution, as

well as the Georgia Constitution Article I, Section 1, Paragraphs I, VII, XIII and XVII.

38.

By detaining Dr. Moses without legal authority, Officer William Blake Yeargin and the City of Arcade Police Department falsely imprisoned Dr. Moses in violation of O.C.G.A. § 16-5-41.

39.

By intentionally engaging in outrageous and unlawful conduct, which caused severe emotional distress to Dr. Moses, Officer William Blake Yeargin and the City of Arcade Police Department deprived are liable for the intentional infliction of emotional distress to Dr. Moses.

## **PRAYER FOR RELIEF**

WHEREFORE, on the basis of the foregoing, Plaintiff respectfully prays that this Court:

(A) Assume jurisdiction over this action;

(B) Award nominal and compensatory damages against each defendant to Dr. Moses in an amount subject to proof;

(C) Award punitive damages against each individual defendant to Dr. Moses according to federal and state law;

(D) Award reasonable attorneys fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable laws;

(E) Award such other and further relief as this Court deems just and proper.

A JURY TRIAL IS REQUESTED.

DATED: This the 7th day of December, 2010.

Respectfully submitted,

/s/ Gerald Weber

_____
Gerald Weber
Georgia Bar No. 74487

Law Offices of Gerry Weber, LLC
Post Office Box 5391
Atlanta, Georgia 31107
Phone: (404) 522-0507
wgerryweber@gmail.com

/s/ Craig Goodmark

_____
Craig Goodmark
Georgia Bar No. 301428

Goodmark Law Firm
Post Office Box 5259
Atlanta, Georgia 31107
(404) 668-3798
cgoodmark@gmail.com